An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1202

NORTH CAROLINA COURT OF APPEALS

Filed: 20 May 2014

STATE OF NORTH CAROLINA

v.                                    Johnston County
                                      No. 12CRS50894
KIMBERLY DALE ADAMS


Appeal by defendant from judgment entered 11 December 2012 by Judge Thomas H. Lock in Johnston County Superior Court. Heard in the Court of Appeals 5 March 2014.

*Attorney General Roy Cooper, by Assistant Attorney General Torrey D. Dixon, for the State.*

*Amanda S. Zimmer for defendant-appellant.*


HUNTER, Robert C., Judge.

Kimberly Dale Adams ("defendant") appeals from judgment entered after a jury convicted her for one count of felony breaking and entering and one count of felony larceny. On appeal, defendant argues that the trial court: (1) erred by admitting irrelevant photographs into evidence; (2) erred by denying defendant's motion to dismiss because there was insufficient evidence to establish all elements of breaking and

entering; and (3) committed plain error by not instructing the jury on abandonment as a defense to larceny. Defendant also argues that her trial counsel was ineffective for failing to request an instruction on abandonment as a defense to larceny.

After careful review, we find no error.

### Background

The evidence presented at trial tended to establish the following facts: defendant and a male companion arrived at the residential home at 185 Winterberry Street in Clayton, North Carolina on 9 February 2012. A neighbor, Michael Coats ("Mr. Coats"), testified that from his own home across the street he saw defendant and the man back into the driveway, open the hatch of their vehicle, and enter the home through the side door of the garage. Mr. Coats approached the house and heard either defendant or her companion opening boxes inside. He then confronted them. Defendant told Mr. Coats that they were working with a realtor, that the house was in foreclosure, and they were considering buying it. Mr. Coats then left the house and called 911. After Mr. Coats left the house, he saw defendant put a crate in the back of the vehicle before driving away.

Two officers responded to the 911 call. Officer Clay Coats ("Officer Coats") found the door to the garage open but in a locked position with signs of possible tampering around the

door. Officer Coats testified that he observed a number of personal belongings in the house. Another officer, Detective Brad Gillis ("Detective Gillis"), testified that he observed slight pry marks on every outside door, each of which was locked. Photographs of pry marks on the front and back doors were admitted for illustrative purposes during the testimony of Detective Gillis, over objection by defense counsel that they were irrelevant.

Defendant was pulled over by Officer Isaiah Ruffin ("Officer Ruffin"), who had responded to the description of the vehicle called in by Mr. Coats. Sergeant Robert Raetz, another officer on the scene, testified that he seized a tote containing "various items" that was in plain view. The police report valued these items at one dollar, but in subsequent arrest warrant they were valued at one hundred dollars. Other officers arrived and located a screwdriver and laptop in the vehicle. Defendant was then arrested and charged with felony breaking and entering and larceny of toys and a container.

At trial, Helen Lambeth ("Ms. Lambeth") testified for the State. She and her husband owned the residence at 185 Winterberry Street, but were in default on their mortgage with Wells Fargo; they received a pre-foreclosure notice from Wells Fargo in June 2011. They moved out in May 2011, bringing most of their personal property with them and had not returned to

reclaim the property left behind. When they moved out of the house, all of the doors were closed and locked with no damage. Her family left property in the house because they could not fit all of their belongings into the small moving vehicle they had rented and could only use for a limited time. However, Ms. Lambeth testified that they planned to return and retrieve the property left behind. Ms. Lambeth further testified that she did not consent to defendant being present or taking the toys and container from the house.

At the close of the State's evidence, defendant moved to dismiss the charges in part because it was unclear who actually owned the house at the time of the alleged breaking and entering. At the close of all evidence, defendant renewed the motion to dismiss. Both motions were denied. The judge instructed the jury that the photographs showing pry marks on the doors were admitted for illustrative purposes only.

The jury found defendant guilty of felony breaking and entering and felony larceny. Defendant received a consolidated sentence of eight to nineteen months imprisonment that was suspended for thirty-six months of supervised probation. Defendant later entered an untimely *pro se* notice of appeal. Defendant filed a petition for writ of certiorari on 12 December 2013.

**Writ of Certiorari**

Defendant concedes that she filed untimely notice of appeal in contravention of Rule 4 of the North Carolina Rules of Appellate Procedure. *See* N.C. R. App. P. 4 (2013). It is well-established that without proper notice of appeal, this Court does not acquire jurisdiction to review the appeal. *State v. McCoy*, 171 N.C. App. 636, 638, 615 S.E.2d 319, 320, *appeal dismissed*, 360 N.C. 73, 622 S.E.2d 626 (2005). However, defendant filed a petition for writ of certiorari in this case seeking a belated appeal. This Court has previously allowed a petition for writ of certiorari where a *pro se* defendant failed to comply with the requirements of Rule 4. *See State v. Crawford*, __ N.C. App. __, __, 737 S.E.2d 768, 769 (2013) (granting the defendant's petition writ of certiorari even though she failed to serve her *pro se* notice of appeal on the State).

Based on the foregoing, we allow defendant's petition for writ of certiorari and will consider the merits of her appeal.

**Discussion**

**I. Photographic Evidence of Pry Marks**

Defendant first argues that the trial court erred when it admitted irrelevant photographs showing damage to the front and back doors of the house. We disagree.

"Even though a trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed

under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal." *State v. Wallace*, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991).

Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2013). Only relevant evidence is admissible. N.C. Gen. Stat. § 8C-1, Rule 402 (2013). If the evidence has no tendency to prove a fact at issue in the case, the evidence is irrelevant and must be excluded. *State v. Perry*, 298 N.C. 502, 510, 259 S.E.2d 496, 501 (1979). There must be a "*reasonable*, or *open and visible* connection, rather than one which is remote, latent, or conjectural, between the evidence presented and the fact to be proved by it." *State v. Bates*, 309 N.C. 528, 536, 308 S.E.2d 258, 263-64 (1983) (alterations in original).

The elements of the crime of breaking or entering are (1) the breaking or entering (2) of a building (3) without the consent of the owner or occupant (4) with the intent to commit any felony or larceny therein. *State v. Boone*, 297 N.C. 652, 657, 256 S.E.2d 683, 686 (1979); N.C. Gen. Stat. § 14-54 (2013). In order for an entry to be unlawful, for the purpose of felonious breaking and entering, the entry must be without the

owner's consent.  *State v. Rawlinson*, 198 N.C. App. 600, 607, 679 S.E.2d 878, 882 (2009).

Defendant argues that the photographs showing damage to the front and back doors of the house were irrelevant because it was established at trial that defendant entered the house through the garage door.  No pictures of the garage door were shown to the jury.  Thus, defendant contends that the photographs of the front and back doors had no "reasonable, or open and visible" connection to any facts at issue in the case.  We disagree.

The photographs were admitted for illustrative purposes to explain testimony from Detective Gillis that there were signs of possible tampering on the doors consistent with forced entry. Where a proper foundation has been laid, photographs may be used to illustrate a witness's testimony and facilitate his explanation.  *State v. Swift*, 290 N.C. 383, 395, 226 S.E.2d 652, 662 (1976).  Here, the photographs explained and illustrated the degree to which the pry marks were present on the front and back doors as Detective Gillis testified.  Defendant does not contest that Detective Gillis's testimony was relevant.  Indeed, this testimony was relevant, because evidence of pry marks on the doors had a tendency to make it more likely that defendant entered the building without the owner's consent and may have entered the garage door because she had tried to get in through other doors, but found them to be locked and impenetrable.

Because entering a building without the consent of the owner constitutes an element of the crime charged, the circumstances surrounding defendant's entry into the home are material facts, and Detective Gillis's testimony made nonconsensual entry more likely than it would be without the evidence. Thus, because the photographs were only admitted to illustrate this relevant testimony, we conclude that the trial court did not err by admitting them for that purpose.

## II. Felonious Intent & Consent to Entry

Defendant next argues that the trial court erred by failing to dismiss the charge of breaking and entering because the State failed to establish: (1) she had the requisite intent to commit a felony or larceny at the time of entry; and (2) she did not have consent to enter the house. We disagree.

We review the trial court's denial of a motion to dismiss *de novo* on appeal. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). Under the *de novo* standard of review, the reviewing court considers the matter anew and freely substitutes its own judgment for the lower court's. *Sutton v. N.C. Dep't of Labor*, 132 N.C. App. 387, 389, 511 S.E.2d 340, 341 (1999).

When a trial court rules on a motion to dismiss, it must determine whether the State presented substantial evidence of each essential element of that offense. *State v. Davis*, 74 N.C. App. 208, 212, 328 S.E.2d 11, 14 (1985). "Substantial evidence

is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995).

The element of intent to commit a felony or larceny must exist at the time of the breaking or entering in order to convict a defendant on that charge. *State v. Freeman*, 307 N.C. 445, 450-51, 298 S.E.2d 376, 379-80 (1983). If intent does not exist at the time of breaking or entering, a defendant would be guilty of a misdemeanor rather than a felony. N.C. Gen. Stat. § 14-54(b) (2013). Intent is usually inferred from the circumstances. *State v. Bell*, 285 N.C. 746, 750, 208 S.E.2d 506, 508 (1974). Our appellate courts have based such inferences on several factors, including the taking of another's property under conditions rendering it unlikely an owner will ever recover the property, the manner in which the property was taken, and the fact that the taker held the property in her possession until it was recovered by the police. *See State v. Smith,* 268 N.C. 167, 173, 150 S.E.2d 194, 200 (1966); *State v.*

*Sakobie*, 157 N.C. App. 275, 284, 579 S.E.2d 125, 131 (2003). However, evidence that an item was taken is not "positive proof" that defendant intended to commit a larceny at the moment he entered the building. *State v. Peacock*, 313 N.C. 554, 559, 330 S.E.2d 506, 508 (1985).

Defendant first argues that since she entered the house during the daytime and explained that her motive was to inspect the house before possibly buying it, the State failed to prove that she intended to commit a felony or larceny therein. Defendant contrasts the facts of this case to *State v. Alexander*, 18 N.C. App. 460, 197 S.E.2d 272 (1973), where this Court noted that "in the absence of evidence of other intent or explanation for breaking and entering, is that the usual object or purpose of burglarizing a dwelling house at night is theft." *Alexander*, 18 N.C. App. at 462-463, 197 S.E.2d at 273-274.

We find, however, that the State presented sufficient evidence for a jury to reasonably conclude that defendant intended to commit a larceny when she entered the house. "The criminal intent of the defendant at the time of breaking or entering may be inferred from the acts he committed subsequent to his breaking or entering the building." *State v. Williams*, 330 N.C. 579, 585, 411 S.E.2d 814, 818 (1992). The State produced the following evidence tending to show that defendant had the intent to commit larceny before entering the house: (1)

defendant and the man accompanying her pulled into the driveway of the house in reverse and opened the hatchback before entering, indicating that they planned to take something from the house and put it into their vehicle; (2) Mr. Coats heard one of the two rummaging through boxes when he approached the house; and (3) defendant was pulled over with items taken from the house in her car shortly after she left. We hold that this evidence was such that a reasonable mind could accept as adequate to support the conclusion that the requisite intent to commit a larceny existed at the time of entry, and thus there was substantial evidence of this element sufficient to survive a motion to dismiss. *See State v. Thompkins*, 83 N.C. App. 42, 44, 348 S.E.2d 605, 606 (1986) (evidence that defendant was seen walking from the house with large objects and that those objects were missing from the house was substantial evidence of the element of intent to commit a larceny at the time of a breaking or entering); *State v. Barnett*, 141 N.C. App. 378, 383, 540 S.E.2d 423, 427 (2000) ("[T]he evidence need only give rise to a reasonable inference of guilt for the case to be properly submitted to the jury."), *aff'd*, 354 N.C. 350, 554 S.E.2d 644 (2001). Accordingly, defendant's argument as to the element of intent is overruled.

Defendant next argues that the State failed to produce a showing that the breaking or entering was without the consent of

the owner or occupant.  *Williams*, 330 N.C. at 585, 411 S.E.2d at 818.  In North Carolina, "as between the mortgagor and the mortgagee, the legal title to the mortgaged premises is vested in the mortgagee, while the mortgagor is looked upon as the equitable owner of the land.  This relative position continues until the land is redeemed or until the mortgage is foreclosed." *Stevens v. Turlington*, 186 N.C. 191, 191, 119 S.E. 210, 211-12 (1923).  Here, Ms. Lambeth was the mortgagor of the property, and Wells Fargo was the mortgagee.  Although Wells Fargo had given notice of pre-foreclosure to the Lambeths in June 2011, foreclosure proceedings had not yet occurred when defendant entered the home.  Thus, because the land was neither redeemed nor foreclosed, Ms. Lambeth was the equitable owner during the time period in question.  Because Ms. Lambeth testified that she did not consent to defendant entering the house, we hold that the State produced substantial evidence that the owner or occupant did not consent to the entry.  Defendant's argument is without merit.

### III. Instruction on Abandonment

Defendant next argues that the trial court committed plain error when it did not instruct the jury that abandonment was a defense to larceny in this case.  We disagree.

Because defendant did not object on this ground at trial, the appropriate standard of review is plain error.  *State v.*

*Black*, 308 N.C. 736, 740, 303 S.E.2d 804, 806 (1983). Plain error arises when the error is "so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]" *State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation and quotation marks omitted).

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice - that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.

*State v. Lawrence,* 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (internal quotation marks omitted).

Property that has been abandoned by the owner cannot be the subject of larceny. *State v. Hall*, 57 N.C. App. 544, 546, 291 S.E.2d 873, 875 (1982). The party relying on the defense of abandonment must affirmatively show by clear, unequivocal, and decisive evidence the intent of the owner to permanently terminate ownership of the disputed property. *State v. West*, 293 N.C. 18, 30, 235 S.E.2d 150, 157 (1977). The owner of personal property may give up his ownership by abandoning the property, and if he does so, title passes to the first person who takes possession thereafter. *Id.*

Defendant argues the trial court plainly erred in failing to instruct on abandonment because the evidence supported such an instruction. Defendant contends that Ms. Lambeth left her personal property unattended for approximately ten months after leaving the home, and that she moved to a location not far from her old home, thus indicating clearly, unequivocally, and decisively that she abandoned the property left in the previous residence. We disagree. Ms. Lambeth testified that she did not intend to terminate her ownership of the property that defendant took from the home. To the contrary, she testified that she intended to return to the house and retrieve the items, which were only left behind temporarily because there was limited space in the moving vehicle and limited time to use it. Given this testimony, we conclude that there was not clear, unequivocal and decisive evidence that Ms. Lambeth permanently terminated ownership of the property in this case. Thus, because there was insufficient evidence to support a jury instruction on the defense of abandonment, the trial court did not err, let alone commit plain error, by declining to issue such an instruction. *See State v. Napier*, 149 N.C. App. 462, 463, 560 S.E.2d 867, 868 (2002); *State v. Torain*, 316 N.C. 111, 116, 340 S.E.2d 465, 468 (1986) (without error, there cannot be plain error).

**IV. Ineffective Assistance of Counsel**

Defendant's final argument is that her trial counsel's failure to request an instruction on the defense of abandonment constituted ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, defendant must show that her trial counsel's performance was deficient and that this deficient performance prejudiced defendant. *State v. Braswell*, 312 N.C. 553, 561-62, 324 S.E.2d 241, 248 (1985). Having found no error in the trial court's decision not to instruct on the defense of abandonment, we hold that defendant has failed to show that her attorney's failure to request such an instruction was deficient or prejudiced her in any way. Thus, defendant's argument is without merit.

**Conclusion**

In sum, the trial court did not commit error: (1) in admitting photographs for the purpose of illustrating relevant testimony; (2) by denying defendant's motion to dismiss; and (3) by not instructing the jury on abandonment as defense to larceny. Further, defendant was not denied effective assistance of counsel when her trial attorney failed to request an instruction on abandonment.

NO ERROR.

Judges GEER and McCULLOUGH concur.

Report per Rule 30(e).